[No. B201439. Second Dist., Div. Two. Oct. 20, 2009.]

DEANA DOWELL et al., Plaintiffs and Appellants;
PACESETTER, INC., et al., Plaintiffs, Cross-defendants and Appellants, v.
BIOSENSE WEBSTER, INC., Defendant, Cross-complainant and
Respondent.

[No. B203501. Second Dist., Div. Two. Oct. 20, 2009.]

PACESETTER, INC., et al., Plaintiffs, Cross-defendants and Respondents, v.
BIOSENSE WEBSTER, INC., Defendant, Cross-complainant and Appellant;
ST. JUDE MEDICAL, INC., Cross-defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

_____

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I.C., and D., II., III. and IV.

## COUNSEL

Feldman Gale, James A. Gale and Todd M. Malynn for Plaintiffs and Appellants, for Cross-defendant and Appellant, for Plaintiffs, Cross-defendants and Appellants and for Plaintiffs, Cross-defendants and Respondents.

Steptoe & Johnson, Mark A. Neubauer, Rebecca Edelson and Carla A. Veltman for Defendant, Cross-complainant and Respondent and for Defendant, Cross-complainant and Appellant.

## OPINION

**DOI TODD, Acting, P. J.**—Plaintiffs and appellants St. Jude Medical S.C., Inc. (SC), and Pacesetter, Inc. (Pacesetter) (collectively, St. Jude), along with employees Deana Dowell, Steven Chapman and Claudio Plaza, sued defendant and cross-complainant Biosense Webster, Inc. (Biosense), to enjoin it from enforcing noncompete and nonsolicitation clauses in employment agreements used in California, including agreements it had with the individual

plaintiffs. The trial court summarily adjudicated that the clauses were facially void under Business and Professions Code[1] section 16600 and that their use violated California's unfair competition law (UCL) (§ 17200 et seq.). The trial court also summarily adjudicated that Biosense's unclean hands defense and its cross-complaint for unfair competition failed as a matter of law. The court determined that there was no "prevailing party" and ordered the parties to bear their own costs.

On appeal, St. Jude contends that the trial court's ruling "did not go far enough" because the court failed to issue a permanent injunction against Biosense's use of such restrictive clauses in all agreements with California employees. Plaintiffs also contend that they are entitled to costs. In its cross-appeal, Biosense contends that the trial court erred in summarily adjudicating the validity of the clauses because there was a triable issue of fact as to whether the so-called "common law trade secret exception" applied, and that the court erred in summarily adjudicating its unclean hands defense and its cross-complaint.

We affirm the judgment. We conclude that the trial court properly determined that the clauses were void as a matter of law, that no defense applied and that the cross-complaint failed to state a cause of action. We also conclude that the trial court did not abuse its discretion in denying a permanent injunction and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Parties*

SC and Biosense are competitors in the market for atrial fibrillation products (e.g., anatomical mapping systems and electrophysiology catheters). Both companies have their principal place of business in California. SC and Pacesetter are subsidiaries of St. Jude Medical, Inc. (SJMI). In 1999, Biosense hired Plaza and eventually promoted him to senior engineer developing electrophysiology catheters. In 2003 and 2004, Biosense hired Dowell and Chapman, respectively, as professional education specialists to educate physicians and their staff about the company's three-dimensional anatomical mapping system. Dowell, Chapman and Plaza are California residents.

*The Agreements*

Upon accepting employment with Biosense, Dowell and Chapman signed an "Employee Secrecy, Non-Competition and Non-Solicitation Agreement"

---

[1] Unless otherwise noted, all statutory references shall be to the Business and Professions Code.

(the agreements).[2] The agreements each contained a covenant not to compete which provided that for 18 months after termination of employment the employee would "not render services, directly or indirectly, to any CONFLICTING ORGANIZATION" in which such services "could enhance the use or marketability of a CONFLICTING PRODUCT by application of CONFIDENTIAL INFORMATION" to which the employee "shall have had access" during employment. A conflicting product was defined as any product, process, technology, machine, invention or service which resembles or competes with one upon which the employee worked or of which the employee was knowledgeable as a result of employment. A conflicting organization was defined as a person or organization engaged or about to become engaged in research, development, production, marketing or selling of a conflicting product. And "CONFIDENTIAL INFORMATION" was defined as "information disclosed to me or known by me as a result of my employment by the COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, about products, processes, technologies, machines, customers, clients, employees, services and strategies of the COMPANY, including, but not limited to . . . marketing, merchandising, selling, sales volumes or strategies, number or location of sales representatives, names or significance of the COMPANY's customers or clients or their employees or representatives, preferences, needs or requirements, purchasing histories, or other customer or client-specific information."

The agreements also contained a nonsolicitation clause which provided that the employee "recognize[s] that the COMPANY's relations with its accounts, customers and clients represents an important business asset that results from the COMPANY's significant investment of its time and resources" and that the employee has "gained or may gain relationships with the accounts, customers and clients of the COMPANY, and because of such relationships, [he/she] could cause the COMPANY great loss, damage, and immediate irreparable harm" if the employee should "sell, offer for sale, or solicit or assist in the sale of a product or service that could compete with a product or service being sold or developed by the COMPANY." The employee "therefore agree[s]" that for 18 months after termination of employment, the employee "will not solicit any business from, sell to, or render any service to, or, directly or indirectly, help others to solicit business from or render service or sell to any of the accounts, customers or clients" with whom the employee had contact during the last 12 months of employment.

The agreements contained New Jersey choice-of-law and consent-to-venue clauses.

---

[2] Plaza signed a different agreement which contained a two-year noncompetition clause. After this lawsuit was filed, Plaza went to work for a third party and voluntarily dismissed his claims without prejudice.

Between April and July 2005, Dowell and Chapman accepted sales positions with SC and Plaza accepted an engineering position with Pacesetter. By the terms of the agreements with Biosense, Chapman's noncompete obligations expired in October 2006 and Dowell's in January 2007.

### The Cease-and-desist Letter

On July 1, 2005, Biosense sent a letter to St. Jude demanding that it cease its "unlawful raiding" of Biosense's employees, including Dowell, Chapman and Plaza. The letter stated that the former employees had covenants not to compete which precluded their employment with St. Jude and their use of confidential and trade secret information relating to the business and personnel of Biosense. While expressing its hope to avoid litigation, Biosense made clear that it was prepared to pursue litigation if necessary and asked for a response within two weeks. St. Jude responded that it needed more time to review the matter. In the meantime, St. Jude initiated this lawsuit.

### The Complaint

On July 26, 2005, St. Jude, Dowell, Chapman and Plaza filed a complaint against Biosense alleging two causes of action for declaratory relief and two causes of action for unfair competition. The first cause of action sought a declaration that the contractual restraints of trade imposed on Dowell, Chapman and Plaza by Biosense were void. The second cause of action sought a declaration that none of the plaintiffs had violated any duty owed to Biosense and that St. Jude could lawfully employ Biosense employees consistent with St. Jude's legal rights. The third cause of action for unfair competition sought an injunction permanently enjoining Biosense from "including covenants not to compete in its employment contracts in California." The fourth cause of action for unfair competition sought an antisuit injunction prohibiting Biosense from trying to enforce its noncompete covenants in any forum other than the Superior Court of Los Angeles County.

### The Answer and Cross-complaint

Biosense answered the complaint asserting an affirmative defense of unclean hands based on the following alleged conduct: St. Jude used employment agreements with provisions similar to those used by Biosense; Dowell, Chapman and Plaza signed employment agreements with St. Jude that contained provisions similar to those used by Biosense; St. Jude used deception to induce Biosense into delaying its own lawsuit in the jurisdiction of its choice; plaintiffs made misleading statements in ex parte pleadings filed with the trial court; and St. Jude had unlawfully raided Biosense's employees.

Biosense filed a cross-complaint against St. Jude and SJMI for unfair competition. Biosense alleged that St. Jude and SJMI unlawfully raided

Biosense employees in California and elsewhere in such a manner as to disrupt Biosense's business; attempted to induce Biosense employees to breach their noncompete agreements with Biosense; and used the insider knowledge of former Biosense employees to unfairly recruit personnel from Biosense. Biosense sought an injunction prohibiting St. Jude and SJMI from using or disclosing Biosense's confidential information and from soliciting Biosense's employees.

*Plaintiffs' Motion for Summary Adjudication of First and Third Causes of Action*

Plaintiffs moved for summary adjudication of their first and third causes of action, arguing that the agreements' noncompete and nonsolicitation clauses in the agreement were facially invalid under section 16600 and that their use violated section 17200. In support of the motion, Dowell and Chapman submitted declarations stating that if the noncompete clauses were enforced, they would be precluded from working in their chosen professions because they would be unable to sell or support the sales of any catheters, since they had worked with catheters for Biosense.

In opposition, Biosense argued there were triable issues of fact as to whether (1) a common law trade secret exception applied, and (2) plaintiffs' unclean hands barred their claims. As to the trade secret exception, Biosense relied on the declaration of its then vice-president of human resources, Roy Chen, who stated that in his experience "[m]ere confidentiality agreements are not adequate" to protect trade secrets because, for example, "[m]isappropriation is often difficult to discover and prove," and that Dowell and Chapman had "access" to Biosense's trade secrets consisting of business, marketing and pricing strategies. Biosense requested a continuance of the motion pursuant to Code of Civil Procedure section 437c, subdivision (h) so that it could take further discovery.

On Feb. 27, 2007, the trial court entered an order granting the motion for summary adjudication (the February 27, 2007 order), finding that "the restrictive covenants" in the agreements signed by Dowell and Chapman were "void *ab initio* and unenforceable under [section] 16600," and that "they constitute[d] unfair and unlawful competition under [section] 17200." The trial court expressly limited its adjudication to the Dowell and Chapman agreements, and struck from plaintiffs' proposed order references to Biosense's agreements with other employees and the proposed permanent injunction seeking to enjoin Biosense from attempting to enforce such clauses against any current or former California employee.

Also in the February 27, 2007 order, the trial court found that Biosense's unclean hands defense was irrelevant to the questions of whether the noncompete and nonsolicitation clauses were enforceable under section 16600 and whether their use violated section 17200, because any use by St. Jude of similar clauses in its own employment contracts would be wholly unrelated to the transaction to which plaintiffs sought relief. The court also found that Biosense's common law trade secret defense failed as a matter of law because the restrictive clauses were not narrowly tailored or carefully limited to the protection of trade secrets and that, in any event, there was no evidence that Biosense's customer list is a trade secret because "it appears that the customers for the products at issue (*e.g.*, physicians [and] hospitals) are easily identified from any number of publicly available directories and resources." The court also denied Biosense's request for additional time to conduct discovery because "(1) Biosense has not requested discovery that pertains to whether the restrictive covenants at issue are invalid under [section] 16600, or whether Biosense's asserted confidential information constitutes a trade secret under California's Uniform Trade Secrets Act (as any such information necessarily would be in Biosense's control); and (2) any such discovery would not alter the Court's ruling that Biosense's broadly worded restrictive covenants are void *ab initio* on their face."

*Plaintiffs' Motion for Summary Adjudication of Biosense's Unclean Hands Defense*

Plaintiffs also moved for summary adjudication of Biosense's unclean hands defense, arguing that the defense failed as a matter of law. In opposition, Biosense once again requested a continuance of the motion to take discovery. In an order dated April 25, 2007, the trial court denied Biosense's request for a continuance and granted the motion for summary adjudication, restating its reasoning in the February 27, 2007 order, and adding the legal conclusion that the defense cannot be used to excuse unlawful conduct.

*St. Jude's Motion for Summary Judgment of Cross-complaint*

Finally, St. Jude and SJMI moved for summary judgment of Biosense's cross-complaint, arguing that Biosense's claims for unfair competition failed as a matter of law. St. Jude relied on the declarations of Dowell, Chapman and Plaza, stating that there was no agreement among them to leave Biosense; Dowell applied to SC at the suggestion of a friend and colleague from a hospital at which she had previously worked; Plaza applied to Pacesetter at the suggestion of a Biosense employee; and neither Dowell, Chapman nor Plaza had disclosed to St. Jude any information about other Biosense employees or solicited any Biosense employees.

In opposition, Biosense again relied on Chen's declaration, which stated that in a few months, six employees (Dowell, Chapman and Plaza and three who lived and worked overseas) had gone to work for St. Jude. Biosense also relied on the declaration of David Seton, who had been Dowell and Chapman's supervisor and who claimed that they were "key" employees because they spent more time with customers in their territory than any other employee, and that they were two of only four education specialists who covered California. Once again, Biosense requested a continuance of the motion to take discovery.

The trial court denied the request for a continuance and granted the motion for summary judgment on the cross-complaint, finding no triable issue of fact existed.

*The Request for a Permanent Injunction*

Following the rulings on the motions for summary adjudication and summary judgment, plaintiffs voluntarily dismissed without prejudice their second and fourth causes of action. St. Jude took the position that the issue of whether it was entitled to permanent injunctive relief had not been resolved by the summary adjudication of the third cause of action and remained to be tried. Although the trial court disagreed, it nevertheless allowed the parties to submit trial briefs on the issue.

In its trial brief, St. Jude stated that it believed the court had before it all the evidence sufficient to issue a permanent injunction, but that in the event it was necessary to produce additional evidence at trial, St. Jude would demonstrate standing to seek a permanent injunction, and produce evidence that Biosense uses the same or similar restrictive clauses in its agreements with California employees.

St. Jude requested a final judgment permanently enjoining Biosense "from having its California-resident employees sign employment agreements that include non-competition or customer non-solicitation clauses that are the same as or substantially similar to the broadly worded covenants found by the Court to be unlawful" and "from enforcing, or attempting to enforce, non-competition or customer non-solicitation clauses that are the same as or substantially similar to the broadly worded covenants set f[or]th above against any current or former California-resident employee who signed an agreement containing such clauses as a condition of employment with Biosense in California." St. Jude also sought as part of the permanent injunction a requirement that Biosense "provide written notice to its current California employees and to former employees who worked for Biosense in California within the past two years by sending a copy of this Order via

certified U.S. Mail to the last known address of all such employees within thirty (30) days from the date hereof."

Following a further hearing on the matter, the trial court concluded that St. Jude had no standing to seek a permanent injunction. The court then signed an order denying the requested permanent injunction "in the exercise of its discretion" for the following reasons: (1) the noncompete and nonsolicitation clauses in Dowell's and Chapman's employment agreements with Biosense had already expired by their terms; (2) "the inherent difficulty in fashioning an injunction of the nature sought"; (3) the injunction sought would "affect agreements with persons not before the Court and whose interests are not represented in this litigation"; (4) St. Jude lacked standing under section 17203 to obtain an injunction that would affect agreements of persons not before the court; and (5) the injunction sought was inconsistent with the court's prior adjudication that the first and third causes of action were limited to Biosense's agreements with Dowell and Chapman.

### The Judgment

The trial court entered judgment as follows: (1) On plaintiffs' complaint, the court declared that the noncompete and nonsolicitation clauses in the agreements with Dowell and Chapman violated section 16600 and were void *ab initio* and unenforceable against Dowell and Chapman; (2) Plaintiffs "shall take nothing" by way of their complaint, other than the declaration described above, and the request for injunctive relief was dismissed with prejudice; and (3) Biosense "shall take nothing" by way of its cross-complaint, which was dismissed with prejudice.

### Plaintiffs' Memorandum of Costs

St. Jude, SJMI, Dowell and Chapman filed a memorandum of costs in the amount of $20,323. The trial court granted Biosense's motion to strike the cost memorandum in its entirety, exercising its discretion to determine that no party was a "prevailing party." At the hearing on the motion, the court stated its belief that plaintiffs' true objective in the litigation was "to get a more global form of injunctive relief," and to that extent they did not succeed.

### Appeals

St. Jude has appealed from the judgment and Biosense has filed a cross-appeal from the judgment. St. Jude, SJMI, Dowell and Chapman have also appealed from the order granting Biosense's motion to strike the cost memorandum. The appeals have been consolidated.

## DISCUSSION

Before we can address St. Jude's contention that the trial court erred in failing to grant a permanent injunction against Biosense's use in its California employment agreements of the noncompete and nonsolicitation clauses that the court found were void and unenforceable under section 16600, we must first address Biosense's contentions that the trial court erred in summarily adjudicating both this finding and Biosense's unclean hands defense.

I. *The Trial Court Properly Determined that the Noncompete and Nonsolicitation Clauses in the Agreements are Void Under Section 16600 as a Matter of Law.*

### A. *Standard of Review*

A motion for summary adjudication shall be granted if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (Code Civ. Proc., § 437c, subd. (f)(1).) We review de novo a trial court's decision to grant summary judgment or summary adjudication. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].) In performing this de novo review, we view the evidence in the light most favorable to the opposing party and strictly construe the evidence of the moving party, and resolve any evidentiary doubts in favor of the opposing party. (*Ibid.*)

### B. *The Noncompete and Nonsolicitation Clauses are Void as a Matter of Law*

Section 16600 states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." There are only three statutory exceptions to this prohibition on noncompete agreements: One who sells the goodwill of a business, or all of one's ownership interest in a business entity (which includes partnerships or corporations), or substantially all of its operating assets and goodwill, to a buyer who will carry on the business may agree with the buyer not to carry on a similar business within a specified geographic area, if the business will be carried on by the buyer (§ 16601); upon dissolution of a partnership or dissociation of a partner, such partner may agree not to carry on a similar business within a specified geographic area, if the business will be carried on by remaining partners or anyone deriving title to the business or its goodwill (§ 16602); and a member of a limited liability company may agree not to carry on a similar business within a specified geographic area, so long as other members or anyone deriving title to the business or its goodwill carries on a like business (§ 16602.5).

■ Section 16600 expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice. (*Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 706 [128 Cal.Rptr.2d 172, 59 P.3d 231]; *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 659 [60 Cal.Rptr.2d 677] ["section 16600 was adopted for a public reason"].) California courts "have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 946 [81 Cal.Rptr.3d 282, 189 P.3d 285] (*Edwards*).) "The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." (*Diodes, Inc. v. Franzen* (1968) 260 Cal.App.2d 244, 255 [67 Cal.Rptr. 19]; see *D'Sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 933 [102 Cal.Rptr.2d 495] (*D'Sa*).) An employer's use of an illegal noncompete agreement also violates the UCL (§ 17200 ["unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . ."]). (*Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 906–908 [72 Cal.Rptr.2d 73] [§ 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under § 17200].)

■ Based on the foregoing it is clear that the noncompete and nonsolicitation clauses in the agreements with Dowell and Chapman are void and unenforceable under section 16600 and that their use violates section 17200. The broadly worded noncompete clause prevents Dowell and Chapman, for a period of 18 months after termination of employment with Biosense, from rendering services, directly or indirectly, to any competitor in which the services they may provide could enhance the use or marketability of a conflicting product by application of confidential information to which the employees had access during employment. Similarly, the broadly worded nonsolicitation clause prevents the employees for a period of 18 months postemployment from soliciting any business from, selling to, or rendering any service directly or indirectly to any of the accounts, customers or clients with whom they had contact during their last 12 months of employment. Ultimately, these provisions restrain the employees from practicing their chosen profession. Indeed, these clauses are similar to those found to be void under section 16600. (See, e.g., *D'Sa, supra,* 85 Cal.App.4th at p. 931; *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407 [75 Cal.Rptr.2d 257]; *Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 860 [27 Cal.Rptr.2d 573] (*Metro Traffic*).)

Biosense contends that the clauses are valid because they were tailored to protect trade secrets or confidential information, and as such satisfy the

so-called trade secret exception, citing cases such as *Thompson v. Impaxx, Inc.* (2003) 113 Cal.App.4th 1425, 1429–1430 [7 Cal.Rptr.3d 427]; *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1462 [125 Cal.Rptr.2d 277]; *Metro Traffic, supra,* 22 Cal.App.4th at page 860; and *American Paper & Packaging Products, Inc. v. Kirgan* (1986) 183 Cal.App.3d 1318, 1322 [228 Cal.Rptr. 713]. Plaintiffs counter that in light of our Supreme Court's recent decision of *Edwards, supra,* 44 Cal.4th 937, a common law trade secret exception no longer exists.

■ The court in *Edwards* concluded that section 16600 "prohibits employee noncompetition agreements unless the agreement falls within a statutory exception." (*Edwards, supra,* 44 Cal.4th at p. 942.) In rejecting the Ninth Circuit's "narrow-restraint" exception to section 16600 (*Edwards, supra,* at pp. 948–950), the court stated: "Section 16600 is unambiguous, and if the Legislature intended the statute to apply to restraints that were unreasonable or overbroad, it could have included language to that effect. We . . . leave it to the Legislature, if it chooses, either to relax the statutory restrictions or adopt additional exceptions to the prohibition-against-restraint rule under section 16600" (*id.* at p. 950). The court went on to state: "Noncompetition agreements are invalid under section 16600 in California, even if narrowly drawn, unless they fall within the applicable statutory exceptions of section 16601, 16602, or 16602.5." (*Id.* at p. 955.) Biosense notes that the *Edwards* court relied on its prior decision in *Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147] (*Muggill*), which held that section 16600 invalidates provisions in employment contracts that "prohibit[] an employee from working for a competitor after completion of his employment . . . unless they are necessary to protect the employer's trade secrets." In a footnote, the *Edwards* court stated: "We do not here address the applicability of the so-called trade secret exception to section 16600, as Edwards does not dispute that portion of his agreement or contend that the provision of the noncompetition agreement prohibiting him from recruiting Andersen's employees violated section 16600." (*Edwards, supra,* at p. 946, fn. 4.) Given this language, Biosense argues that the trade secret exception is still "alive and well."

Plaintiffs argue that the trade secret exception rests on shaky ground in the first place. They point out that many of the cases recognizing a trade secret exception cite to *Muggill* and that the language in *Muggill* regarding a trade secret was dicta, as no trade secrets were at issue in that case. Plaintiffs also point out that *Muggill,* in turn, relied on *Gordon v. Landau* (1958) 49 Cal.2d 690 [321 P.2d 456], a "trade route" case in which the employee was a door-to-door salesman, whose employment agreement prevented him from divulging the names of his prior customers or soliciting their business for one year following termination of employment. The *Gordon* court concluded that the agreement was valid under section 16600 because it did not restrain the

employee from engaging in his profession. (*Gordon v. Landau, supra*, at p. 694.) Plaintiffs suggest that the trade secret exception should be limited to "the narrow and antiquated circumstances of door-to-door trade routes" where it is proven that the identity of the customers is a trade secret. Biosense counters that the exception has not been so limited, noting, for example, that the exception was at issue in *Metro Traffic, supra*, 22 Cal.App.4th 853, a case having to do with the news radio business and not trade routes.

At oral argument, plaintiffs' counsel discussed the recent case of *The Retirement Group v. Galante* (2009) 176 Cal.App.4th 1226 [98 Cal.Rptr.3d 585] (*Galante*), the first published California case to discuss *Edwards*'s reference in footnote four to the trade secret exception.[3] The *Galante* court stated that "*Edwards* did not *approve* the enforcement of noncompetition clauses whenever the employer showed the employee had access to information purporting to be trade secrets. Instead, *Edwards* merely stated it was not required to 'address the applicability of the so-called trade secret exception to section 16600' (*Edwards, supra*, 44 Cal.4th at p. 946, fn. 4) because it was not germane to the claims raised by the employee." (*Galante, supra*, at p. 1239.) In reconciling the "tension" between section 16600 and trade secrets, the *Galante* court stated: "We distill from the foregoing cases that section 16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause purporting to ban a former employee from soliciting former customers to transfer their business away from the former employer to the employee's new business, but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) and/or the unfair competition law) by banning the former employee from using trade secret information to identify existing customers, to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer. Viewed in this light, therefore, the conduct is enjoinable *not* because it falls within a judicially created 'exception' to section 16600's ban on contractual nonsolicitation clauses, but is instead enjoinable because it is wrongful independent of any contractual undertaking." (*Galante, supra*, at pp. 1233, 1238.)

Although we doubt the continued viability of the common law trade secret exception to covenants not to compete, we need not resolve the issue here. Even assuming the exception exists, we agree with the trial court that it has no application here. This is so because the noncompete and nonsolicitation clauses in the agreements are not narrowly tailored or carefully limited to the protection of trade secrets, but are so broadly worded as to restrain competition. (See *Kolani v. Gluska, supra*, 64 Cal.App.4th at p. 407 [finding as a

---

[3] At our invitation, the parties submitted additional briefing on this case and another recent case mentioned by plaintiffs' counsel, *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634 [88 Cal.Rptr.3d 859, 200 P.3d 295], which is discussed in the unpublished portion of this opinion.

matter of law on demurrer that a noncompete clause was void because it was not "narrowly tailored" but "an outright prohibition on competition"].)

Biosense argues that the clauses in the agreements are narrowly tailored to protect trade secrets and confidential information because they are "tethered" to the use of confidential information, and are triggered only when the former employee's services for a competitor implicate the use of confidential information. As such, to the extent that no confidential information was disclosed or made known to Dowell and Chapman during their employment with Biosense, the noncompete clause would never be triggered. But this argument ignores the broad wording of the agreements. The noncompete clause prohibits an employee from rendering services, directly or indirectly, to a competitor where those services could enhance the use or marketability of a conflicting product through the use of confidential information to which the employee had access at Biosense. "Confidential information" is broadly defined as information disclosed to or known by the employee, including such information as the number or location of sales representatives, the names of customers, customer preferences, needs, requirements, purchasing histories or other customer-specific information. Given such an inclusive and broad list of confidential information, it seems nearly impossible that employees like Dowell and Chapman, who worked directly with customers, would not have possession of such information. The prohibition here is not unlike the noncompete clause found facially invalid by the court in *D'Sa, supra,* 85 Cal.App.4th at page 930. There, the employment agreement prohibited the departing employee from " 'render[ing] services, directly or indirectly, for a period of one year . . . to any person or entity in connection with any Competing Product,' " which was defined as " 'any products, processes or services . . . which are substantially the same . . .' " as those on which the employee worked or "about which" the employee worked or " 'about which [the employee] acquire[d] Confidential Information.' " (*Ibid.*)

We also reject the argument of Biosense that the nonsolicitation clause is narrowly tailored to protect trade secrets and confidential information. The same argument was rejected by the *Galante* court, which noted: "However, *Edwards* rejected the claim that antisolicitation clauses could be exempt from section 16600 if the conduct covered by such clauses fell within the 'narrow-restraint' exception discussed in *Campbell* (*Edwards, supra,* 44 Cal.4th at pp. 948–950), and we decline TRG's implicit invitation to engraft that exception onto this case." (*Galante, supra,* 176 Cal.App.4th at p. 1241.) Moreover, the clause at issue here goes well beyond prohibiting active solicitation by prohibiting departing employees from selling or rendering any

services to Biosense customers or directly or indirectly assisting others to do so—even if it is the customer who solicits the former employee. (See *Morris v. Harris* (1954) 127 Cal.App.2d 476, 478 [274 P.2d 22] [invalidating restraint that prohibited employee from providing services to former customers who sought him out without any solicitation].)

We also reject Biosense's argument that the trial court failed to interpret the clauses in such a way as to make them lawful. Any attempt to construe the noncompete and nonsolicitation clauses in such a manner as to make them lawful would not be reforming the contract to correct a mistake of the parties but rather to save a statutorily proscribed and void provision. (See *D'Sa, supra*, 85 Cal.App.4th at p. 935.)

Biosense also argues that the trial court improperly determined the invalidity of the noncompete and nonsolicitation clauses by summary adjudication because the court failed to consider Biosense's evidence that trade secrets existed and that the clauses were necessary to protect them. But we are satisfied that the trial court could properly make this determination as a matter of law. (See, e.g., *Kolani v. Gluska, supra*, 64 Cal.App.4th at p. 407 [finding covenant not to compete invalid as a matter of law on demurrer]; *Kelton v. Stravinski* (2006) 138 Cal.App.4th 941, 946–949 [1 Cal.Rptr.3d 877] [finding covenant not to compete invalid as a matter of law on summary judgment]; *Edwards, supra*, 44 Cal.4th at pp. 944, 948 [finding covenant not to compete invalid as a matter of law where trial court "took no evidence"]; *Latona v. Aetna U.S. Healthcare Inc.* (C.D.Cal. 1999) 82 F.Supp.2d 1089, 1093 [factual analysis of trade secret issues is "secondary" to determination of "facial validity" of covenant not to compete].) Having properly determined that the clauses were facially void under section 16600, the trial court was not required to undertake any further analysis.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 564.

## DISPOSITION

The judgment is affirmed. The parties to bear their own costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.

A petition for a rehearing was denied November 19, 2009, and the petition of appellant Steven Chapman for review by the Supreme Court was denied February 24, 2010, S178811. Baxter, J., did not participate therein.