Filed 11/5/15  Destinations to Recovery v. Evolve Initiatives CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DESTINATIONS TO RECOVERY, | B259011 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. SC122663) |
| EVOLVE INITIATIVES LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Craig D. Karlan, Judge.  Affirmed in part and reversed in part.

Miller Barondess, Brian A. Procel, J. Mira Hashmall, and Casey B. Pearlman, for Plaintiff and Respondent.

Ross & Silverman, Melanie C. Ross and Lora Silverman, for Defendants and Appellants.

\*     \*     \*

Defendants Menachem Baron (Baron) and Justin "Gryphon" Ward (Ward) helped run plaintiff Destinations to Recovery (Destinations) before leaving to form a competing business, defendant Evolve Treatment Centers (Evolve). Destinations sought and obtained a court order preliminarily enjoining Baron, Ward and Evolve from using Destinations' trade secrets and proprietary information to operate their competing business. Defendants appeal the injunction on several grounds. We conclude that the injunction is valid except as to the provisions barring defendants from initiating contact with Destinations' patients or employees, which are overbroad. Accordingly, we affirm in part and reverse in part.

**FACTS AND PROCEDURAL BACKGROUND**

**I.    Facts**

Destinations operates treatment facilities for teens with addiction and mental health issues. Destinations hired Baron and Ward as part of its senior management team, and employed Ward's wife as an administrative assistant.

When they were hired, Baron and Ward signed a confidentiality and nonsolicitation agreement that prohibited them (1) from storing or using certain "confidential information" and defined confidential information to include customer information and internal marketing and sales plans, and (2) for three years after their termination, from soliciting Destinations' other employees or from soliciting Destinations' clients using customer information.

On May 19, 2014, Baron and Ward abruptly resigned. In a mass email addressed to Destinations' staff, clients, and investors, Baron and Ward announced that they were leaving Destinations to provide adolescent treatment services through their own, newly formed company, Evolve.

After their resignation, Destinations discovered that this departure had been well planned. Analysis of Destinations' computers revealed that, prior to Baron's and Ward's resignations, hundreds of Destinations' business documents—including financial records, business plans, company procedures, patient photos and contact information, employee rosters and contact information, vendor and referral lists, marketing materials, and

insurance information—had been uploaded into a "Dropbox" shared file folder, and had been accessed and manipulated by Ward's wife through an Evolve email address. According to Destinations' vice president, these business documents contained proprietary information that was integral to the ongoing operation of Destinations and that Destinations had taken steps to keep confidential. Analysis further revealed that Ward had, on the day he resigned, accessed Dropbox and removed a thumb drive from his computer; Ward later admitted he gave at least two thumb drives containing Destinations' documents to a computer consultant hired by his lawyers.

Baron and Ward had tried to cover their tracks: Ward ran several defragmentation programs (which have the effect of making it more difficult to recover deleted files) on his work computer in the days and weeks prior to his resignation; and Baron deleted dozens of files from his computer the day he resigned, leaving just three documents on the entire computer. Forensic experts were nevertheless able to recover emails and deleted files indicating that Baron and Ward had "cut and pasted" large sections of Destinations' business plan into Evolve's business plan; indeed, the metadata from Evolve's business plan indicated that the document had originally started as a document written by Destinations.

Baron also recruited another Destinations employee, Nichum Schapiro (Schapiro), to join him and Ward at Evolve after sending Schapiro Destinations' confidential financial projections and income statement. Baron, Schapiro and an Evolve investor subsequently tried to recruit other Destinations employees, and offered jobs at Evolve to Destinations' contract medical director and contract psychiatrist.

## II. Litigation

Destinations sued Baron, Ward, and Evolve[1] (collectively, "defendants") for (1) knowingly accessing its computer system with intent to obtain property or data (Pen.

---

[1] The complaint names Evolve Initiatives LLC (rather than Evolve Treatment Centers). However, the complaint also alleges several Doe defendants who are "in some

Code, § 502), (2) conversion, (3) misappropriation of trade secrets, in violation of California's Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.), (4) breach of fiduciary duty, (5) intentional interference with a contract, (6) unfair competition, in violation of the Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.), and (7) breach of the confidentiality and nonsolicitation agreement.[2]

Destinations moved ex parte for a temporary restraining order (TRO) and for expedited discovery. The trial court granted a TRO enjoining defendants from using Destinations' "confidential and proprietary information or documents" and from contacting any of Destinations' employees or current or former patients. The court also ordered expedited discovery, and specifically ordered Baron and Ward to turn over their computers and phones for analysis. This discovery revealed that defendants' Evolve computers contained, in a file called "MotherFer," Destinations' confidential projections for a treatment facility, and that Baron had not returned one of his personal hard drives containing confidential client information from Destinations (instead, he deleted its contents).

Destinations then moved for a preliminary injunction. After a hearing, the trial court issued a 14-page written order. The court based the injunctive relief solely on Destinations' claim for misappropriation of trade secrets and confidential proprietary information. The court noted that the parties' evidence was disputed, but after outlining the evidence set forth above, found that "the weight of the evidence is in [Destinations'] favor." The court also determined that the hardship to Destinations if an injunction was not granted was greater than the hardship to defendants if it were.

---

manner responsible for the events" alleged in the complaint. Thus, our reference to Evolve covers all Evolve entities.

**2**     Defendants filed a cross-complaint, but it is not relevant to the issues on appeal.

The trial court denied Destinations' request to enjoin defendants from opening an Evolve residential facility in Ojai, California, but issued a preliminary injunction with six provisions:

No. 1: Defendants are "restrained and enjoined from misappropriating [Destinations'] trade secrets and confidential information";

No. 2: Defendants are "restrained and enjoined from using any confidential or proprietary information or documents belonging to [Destinations]";

No. 3: Defendants must "return all confidential and proprietary documents belonging to [Destinations], whether in electronic or hardcopy format";

No. 4: Defendants are "restrained and enjoined from altering or destroying any electronic evidence, including use of any hard drive optimization or 'wipe' programs";

No. 5: Defendants are "restrained and enjoined from initiating contact with any of [Destinations'] employees"; and

No. 6: Defendants are "restrained and enjoined from initiating contact with any of [Destinations'] current or former patients."

Defendants timely appeal.

## DISCUSSION

Defendants challenge the propriety of the preliminary injunction. When deciding whether to issue a preliminary injunction, a trial court "'weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction.'" (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1449-1450, quoting *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 (*Whyte*).) "'"Generally, the ruling on an application for preliminary injunction rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal absent a showing that it has been abused. [Citations.]"'" (*Ibid.*; see also Code Civ. Proc., § 526, subd. (a).) Where the appellant challenges the evidentiary foundation for an injunction and the evidence is disputed, we review the record for substantial evidence—that is, we "interpret the facts in the light most favorable to the prevailing party[,] indulge in all reasonable inferences in support of

5

the trial court's order," and do not reweigh the evidence. (*Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1820 (*Hilb, Rogal & Hamilton*).) Where the appellant's challenge involves questions of law or the application of the law to undisputed facts, our review of that challenge is de novo. (*Westchester Secondary Charter School v. Los Angeles Unified School Dist.* (2015) 237 Cal.App.4th 1226, 1236.)

## I. Probability of Prevailing on the Merits

"'While it has been legally recognized that a former employee may use general knowledge, skill, and experience acquired in his or her former employment in competition with a former employer, the former employee may not use confidential information or trade secrets in doing so.'" (*Readylink Healthcare v. Cotton* (2005) 126 Cal.App.4th 1006, 1017 (*Readylink*), quoting *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1519 (*Morlife*).) In line with this recognition, and as discussed below, Destinations has established a probability of prevailing on its misappropriation of trade secrets and unfair competition law claims.

California's Uniform Trade Secrets Act (the Act) authorizes damages and injunctive relief to enjoin the "[a]ctual or threatened misappropriation" of trade secrets. (Civ. Code, §§ 3426.2, subd. (a), 3426.3; *Readylink*, *supra*, 126 Cal.App.4th at p. 1018.) The Act defines a "trade secret" as "information" that (1) "[d]erives independent economic value . . . from being not generally known to the public or to other persons who can obtain economic value from its disclosure or use"; and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).) "Misappropriation" includes, among other things, the "use of a trade secret of another without express or implied consent by a person who . . . [u]sed improper means to acquire knowledge of the trade secret." (*Id.*, § 3426.1, subd. (b).)

In *Readylink*, the court upheld a preliminary injunction enjoining a former employee of a nurse staffing firm from soliciting the firm's employees and customers, where there was "overwhelming" evidence that the employee intended to start his own competing nurse staffing business and had solicited his former employees and nurses using confidential internal lists of nurses, employees, and healthcare facility customers as

well as salary and other "confidential and proprietary" information. (*Readylink*, *supra*, 126 Cal.App.4th at p. 1018.) Customer lists themselves can be trade secrets, at least where the customers are not easily identifiable and the list took substantial time, effort, and expense to develop. (*The Retirement Group v. Galante* (2009) 176 Cal.App.4th 1226, 1237-1238 (*Galante*); *Courtesy Temporary Service, Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1286-1287 (*Courtesy Temporary Service*).) The information defendants accessed from Destinations without its permission includes not only the lists of its customers—teens with sensitive mental health and substance abuse issues—but also its business plans, financial records, vendor and referral lists, and insurance information. This information is proprietary, and is valuable because it is private; indeed, Destinations took pains to keep it secret by requiring its employees to sign agreements highlighting its confidentiality.

The unfair competition law authorizes damages and injunctive relief to prevent "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, §§ 17200 & 17203.) "[T]he cases are legion holding that a former employee's use of confidential information obtained from his former employer to compete with him and to solicit the business of his former employer's customers, is regarded as unfair competition." (*Courtesy Temporary Service*, *supra*, 222 Cal.App.3d at p. 1292; *Readylink*, *supra*, 126 Cal.App.4th at p. 1021 [same].) It is unfair because "'[t]rade and business secrets and confidential information are the property of the employer and cannot be used by the employee for his own benefit.'" (*Morlife*, *supra*, 56 Cal.App.4th at p. 1526; Lab. Code, § 2860 ["Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of his term of employment"].) An employee's use that information is a form of "cheating" because the employee is making "gratuitous use of [his employer's] 'sweat-of-the-brow.'" (*Morlife*, *supra*, 56 Cal.App.4th at p. 1520; accord, *D'Sa v. Playhut* (2000) 85 Cal.App.4th 927, 935 ["employers have the right to protect proprietary and property rights which are subject to

7

protection under the law of unfair competition"].)  Because, as noted above, substantial evidence supports the trial court's finding that the information defendants took from Destinations was confidential, defendants' use of that information to compete with Destinations constitutes an unfair business practice.

Defendants raise two objections to this analysis.  First, they argue that not all of the information taken from Destinations qualifies as a "trade secret" within the meaning of the Act.  However, this is of no moment because Destinations established that all of the confidential and proprietary information at issue in this case falls within the broader protections of the unfair competition law that independently supports the injunction.  Second, defendants contend that they may eventually prove at trial that some of the information is not protected at all.  "'The ultimate determination of trade secret status'" or application of the unfair competition law "'is subject to proof presented at trial'" (*Readylink*, *supra*, 126 Cal.App.4th at pp. 1017, quoting *Whyte*, *supra*, 101 Cal.App.4th at p. 1453), but we are tasked here with assessing "whether the trial court abused its discretion based on the record before it at the time of the ruling."  (*Hilb, Rogal & Hamilton*, *supra*, 33 Cal.App.4th at p. 1820.)  The trial court did not.

## II.     Balancing of the Interim Harms

In balancing the interim harms, we must look at the harm to each party should the injunction be granted or denied.  (*Whyte*, *supra*, 101 Cal.App.4th at pp. 1449-1450.)  If the injunction is granted, Destinations would be protected from misappropriation of its trade secrets and from unfair business practices arising from defendants' use of its confidential and proprietary information.  Defendants would not be allowed to use Destinations' trade secrets or proprietary information or initiate contact with Destinations' patients and employees, but would otherwise be permitted to operate their competing business.  If the injunction is denied, defendants would be allowed to use Destinations' trade secrets and proprietary information—including its business plan, its financial records, its marketing materials, its insurance information as well as its patient, employee, and vendor lists—to compete with Destinations and to solicit its patients,

8

employees, and vendors. However, Destinations would be unprotected from this conduct, which would substantially impair—if not destroy—Destinations' operations.

In light of these considerations, the trial court did not abuse its discretion in concluding that the interim harm to defendants from granting the injunction (namely, modest limitations on how it operates its business) outweighed the interim harm to Destinations from denial of the injunction (namely, the potentially irremediable loss of its patients, employees, and vendors due to defendants' use of its own trade secrets and proprietary information). Indeed, defendants do not contest this balancing on appeal.

## III. Defendants' Challenges

Separate and apart from whether Destinations is likely to prevail on the merits of its claims and whether the balance of interim harms favors Destinations, defendants level three attacks at the preliminary injunction itself. They assert that all or part of the injunction is overbroad under Business and Professions Code section 16600, is unconstitutional, or is moot. We consider each argument in turn.

### A. Section 16600

Business and Professions Code section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (Bus. & Prof. Code, § 16600.) This absolute bar on contractual restrictions repudiated the earlier, common law rule that allowed "reasonabl[e]" "restraints on the practice of a profession, business or trade." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 943 (*Edwards*); *Galante*, *supra*, 176 Cal.App.4th at pp. 1233-1234.) Unless a contractual restraint falls into one of section 16600's three statutory exceptions (in sections 16601, 16602, or 16602.5), it is void. (*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 576 (*Dowell*) [noting how California does not follow the Ninth Circuit's exception for "narrow-restraints" on practicing a profession].)

Defendants seem to make two arguments based on section 16600.

First, defendants assert that section 16600 categorically precludes issuance of an injunction whenever that injunction would in any sense interfere with a former

9

employee's lawful profession, trade, or business. We disagree. As an initial matter, this argument is unsupported by the language of section 16600, which applies to restraints imposed by "contract"—not *all* restraints. (Bus. & Prof. Code, § 16600.) Although Destinations in this case alleged a cause of action based on breach of the confidentiality and nonsolicitation agreement with Baron and Ward, the trial court's injunction did not rest on that cause of action; consequently, there is some question as to whether section 16600 applies at all in this case.

However, even where an injunction is grounded in contract, courts have noted the "tension" between section 16600's bar on contractual restraints on the one hand, and the cases allowing for injunctions to protect trade secrets and to guard against unfair competition on the other hand (*Galante*, *supra*, 176 Cal.App.4th at p. 1233), but have generally resolved that tension by allowing the injunction to the extent necessary to protect the employer's trade secrets and proprietary information. (*Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [allowing injunctions that "are necessary to protect the employer's trade secrets"]; *Wanke, Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1174; *Readylink*, *supra*, 126 Cal.App.4th at p. 1022; *Thompson v. Impaxx, Inc.* (2003) 113 Cal.App.4th 1425, 1429; *Fowler v. Varian Assocs.* (1987) 196 Cal.App.3d 34, 44 ["agreements designed to protect an employer's proprietary information do not violate section 16600"]; *Robert L. Cloud & Assocs. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1150; cf. *Dowell*, *supra*, 179 Cal.App.4th at p. 577 [expressing doubt as to whether injunction to protect trade secrets survives section 16600 where there was no proof of misappropriation].) That is because "section 16600 bars a court from specifically enforcing a *contractual* clause purporting to ban a former employee . . ., but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act . . . and/or the unfair competition law) by banning the former employee from using trade secret information . . . to otherwise unfairly compete with the former employer." (*Galante*, at p. 1238.)

Drawing this particular distinction makes sense. Defendants' expansive reading of section 16600 would partially negate Civil Code section 3426.2 and Business and

10

Professions Code section 17203 that expressly provide for injunctive relief, and such a result flies in the face of the canons of statutory construction dictating that we must if possible harmonize and give effect to each provision. (*Even Zohar Constr. & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838.) Defendants' reading would also mean that former employees would be able to exploit their former employer's trade secrets and confidential information without restraint, subject only to a later suit for damages after the fact. But a damages remedy will often come too late to protect those rights or to protect the employer. Trade secrets and proprietary information are valuable *because* they are confidential; once exploited by the former employee, a damages remedy is of little use to a defunct employer. In sum, section 16600 does not erect a categorical bar to injunctive relief.

Second, defendants contend that the preliminary injunction in this case sweeps more broadly than necessary to guard against the misappropriation of Destinations' trade secrets or unfair competitive conduct. We conclude that the first four provisions of the preliminary injunction are aimed specifically at protecting Destinations from defendants' tortious conduct because they (1) enjoin the misappropriation of its trade secrets or confidential information, (2) enjoin the use of its confidential and proprietary information, (3) require the return of its confidential and proprietary information, and (4) enjoin the deletion or alteration of electronic evidence (where, in this case, the confidentiality and proprietary information has been stored).

The last two provisions of the injunction—the ones enjoining defendants from "initiating contact" with Destinations' employees and its "current or former patients"— sweep more broadly than necessary to protect Destinations' trade secrets and proprietary information. To be sure, defendants might use Destinations' trade secrets and proprietary information to solicit its patients and employees to migrate over to Evolve; to that extent, the nonsolicitation provisions are valid. (See *Readylink*, *supra*, 126 Cal.App.4th at pp. 1019-1022; *Wanke*, *supra*, 209 Cal.App.4th at p. 1174 ["a former employee may be barred from soliciting existing customers . . . *if the employee is utilizing trade secret information to solicit those customers*"]; *Galante*, *supra*, 176 Cal.App.4th at p. 1237

11

[same].)  But the provisions here are not limited to solicitations based upon use of Destinations' trade secrets or proprietary sections; instead, they reach the initiation of *any* contact.  Indeed, as written, they ostensibly prevent Baron or Ward from asking a former colleague to lunch.  Where a provision sweeps more broadly than necessary to prevent tortious conduct and where the tortious conduct is protected elsewhere by the injunction, section 16600's prohibitions take precedence and an injunction is to that extent void. (See *Galante*, *supra*, 176 Cal.App.4th at pp. 1239-1241 [invalidating injunction that enjoined solicitation of prior customers that was not aimed at protecting trade secrets]; *Dowell*, *supra*, 179 Cal.App.4th at p. 575 [invalidating "broadly worded" noncompete and nonsolicitation clauses]; see generally *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1266, 1268 [injunctions may not be broader than necessary].)  We therefore vacate these two provisions, and remand to the trial court to ascertain whether they are necessary in light of the general prohibition against use of Destinations' trade secrets and proprietary information and, if so, for appropriate tailoring.

### B.      Constitutional Challenges

Defendants next raise two constitutional challenges to the preliminary injunction.

First, they argue that its terms are constitutionally vague.  An injunction is sufficiently clear (and not vague) if its terms are "plain enough that a person of common intelligence can understand them."  (*People v. Custom Craft Carpets, Inc.* (1984) 159 Cal.App.3d 676, 681 (*Custom Craft Carpets*); *Pitchess v. Superior Court* (1969) 2 Cal.App.3d 644, 651.)  Defendants argue that Destinations' confidentiality and nonsolicitation agreement defines "confidential information" so broadly as to leave it without meaning and, worse yet, places the burden on the employee to establish that information is *not* "confidential information."  As noted above, however, the preliminary injunction does not rest on Destinations' claim that the agreement was breached and the injunction's language is not tied to the agreement; defendants' criticisms of the agreement are accordingly irrelevant.  Defendants further assert that the injunction does not spell out specifically which information and documents are to be considered "trade

12

secrets" and "confidential and proprietary information." But given that defendants deleted (or tried to delete) much of that information and have also refused to return electronic media ostensibly containing such information, they are not in a position to complain that the trial court did not specify what that information is. In light of these considerations, as well as the general rule that injunctions need not be drawn with "microscopic precision" and are sufficiently clear "if it is reasonably possible to determine whether a particular act is included within [their] grasp" (*Custom Craft Carpets*, at p. 681), we reject defendants' vagueness challenge.

Second, defendants argue that the preliminary injunction violates the First Amendment because it is constitutes an impermissible "prior restraint" and is overbroad. Although "prior restraints on speech . . . are the most serious and least tolerable infringement on First Amendment rights" (*Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 559), an injunction that is aimed at protecting private property rights does not constitute a "prior restraint." (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 887.) As noted above, we agree with defendants that the preliminary injunction is overbroad to the extent that its provisions barring the initiation of contact with Destinations' patients and employees sweep more broadly than necessary to protect against the misappropriation of trade secrets and unfair competition.

### C.     Mootness

Defendants also argue that the preliminary injunction's fourth provision enjoining them from "altering or destroying any electronic evidence" is moot given that their devices have already been seized. But the record contains evidence that Baron and Ward gave their attorney's computer consultant thumb drives and that Ward erased his personal hard drive, and this provides ample grounds for enjoining further deletions. Defendants' related argument that this provision is vague is also without merit because people of ordinary intelligence would understand the provision to preclude them from wiping information from any of the electronic devices they use for work or for personal reasons (given that Baron and Ward have deleted information from such devices in the past).

**DISPOSITION**

We vacate the preliminary injunction's fifth and sixth provisions enjoining defendants from initiating contact with Destinations' patients and employees, and remand for the trial court to consider whether to tailor or delete these provisions. We otherwise affirm. Parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
                                    HOFFSTADT

We concur:

_____, Acting P. J.
   ASHMANN-GERST

_____, J.
      CHAVEZ

14