Filed 10/13/20; Modified and Certified for Pub. 11/12/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD HALE BROWN, | |
| Plaintiff and Appellant, | G058323 |
| v. | (Super. Ct. No. 30-2016-00881773) |
| TGS MANAGEMENT COMPANY, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Reversed and remanded.

SV Employment Law Firm, Steven L. Friedlander, Stacey Ann Zartler and Julian Pardo de Zela for Plaintiff and Appellant.

Munger, Tolles & Olson and Terry E. Sanchez; Paul, Weiss, Rifkind, Wharton & Garrison and Martin Flumenbaum for Defendant and Respondent.

\*          \*          \*

This appeal is from a judgment confirming an arbitration award in favor of defendant TGS Management Company (TGS) in an employment contract dispute with TGS's former employee, plaintiff Richard Hale Brown (Brown). Brown contends we must vacate the judgment because the arbitration award exceeded the arbitrator's powers "and the award cannot be corrected without affecting the merits of the decision[.]" (Code Civ. Proc., § 1286.2, subd. (a)(4).) Brown argues we may review the arbitration award under *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 (*Moncharsh*), because the award is "inconsistent with the protection of a party's statutory rights" and conflicts with "explicit legislative expression of public policy[.]" (*Id.* at p. 32.)

The specific statutory right at issue in the underlying dispute is Brown's right to work in his chosen field free of contractual restraints on competition. The Legislature expressed that right in the simple but sweeping language of Business and Professions Code section 16600 (section 16600): "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void."

As we explain below, Brown's appeal has merit. We conclude the arbitrator exceeded his power in issuing an award enforcing provisions of an employment agreement which illegally restrict Brown's right to work. Consequently, we reverse the judgment and remand the matter to the trial court for further proceedings consistent with this opinion.

I

BACKGROUND

A. *Brown's Employment with TGS*

TGS is a private limited liability company which engages in a highly computerized form of equities trading known as statistical arbitrage. Brown began working for TGS in 2005. As a condition of employment, he signed an agreement bearing the title, "Confidentiality, Noncompetition, Assignment and Notice Agreement"

2

(the Employment Agreement).  The 12-page agreement contains numerous provisions restricting Brown's right to compete with TGS after leaving its employ, including a two-year ban on engaging in "Directly Competitive Activity[.]"

We discuss these anticompetitive provisions in some detail below.  In particular, we note the "confidentiality" provisions of the Employment Agreement bar Brown in perpetuity from disclosing or using "Confidential Information" for his own benefit or the benefit of any party other than TGS or a TGS client.   A key contention of Brown's appeal is the Employment Agreement defines "Confidential Information" so broadly as to prevent him from ever working again in securities trading, much less in his chosen specialty of statistical arbitrage.

The Employment Agreement also contains an arbitration clause requiring the parties to engage in "Binding Dispute Resolution" of all disputes arising under or out of the Employment Agreement.

Brown worked for TGS for over 10 years.  During that time, a substantial portion of Brown's compensation was a yearly bonus which rewarded Brown's performance over the previous year with a sizable cash award to be paid over the next two years.  In June 2015, Brown executed the "2014 Bonus Agreement" (the Bonus Agreement), which awarded Brown for his performance "for the period commencing on December 1, 2013 and ending on November 30, 2014."  The Bonus Agreement is discussed in greater detail below.  We note section 4.3 of the Bonus Agreement made any "vested" but "unpaid" bonus subject to forfeiture upon TGS's *posttermination* discovery of any "act which could have been the basis for a termination for Cause," specifically including breach of the Employment Agreement's confidentiality provisions.  The Bonus Agreement contained an arbitration clause similar to that in the Employment Agreement.

In February 2016, TGS terminated Brown's employment without cause effective March 23, 2016.  Over the next month, Brown and TGS attempted to negotiate a confidential separation agreement.  TGS prepared a settlement offer in the form of a draft

3

separation and general release agreement (the Draft Separation Agreement), but Brown rejected the offer.

TGS terminated Brown as planned, making the termination "without cause" so Brown could keep two bonuses he had earned but not yet received (the deferred bonuses), given the two-year bonus structure in place.  At the time he was terminated, Brown expected to receive in December 2016 the sum of $652,243 as the second installment of his 2014 bonus (the deferred 2014 bonus), and another $300,000 in December 2017 as the second installment of his 2015 bonus (the deferred 2015 bonus).

B.  *The Arbitration Proceedings*

In October 2016, Brown filed a complaint against TGS stating claims for declaratory relief, injunctive relief, and reformation of the arbitrator-selection process in the Employment Agreement.  The declaratory relief claim sought a declaration Brown could compete with TGS without risking a damages claim for breaching the Employment Agreement or jeopardizing his two deferred bonuses.  Brown also sought an injunction against enforcement of the covenant not to compete.

Ten days after filing the complaint, Brown filed a petition to compel arbitration.  Brown attached as an exhibit to the petition an unsigned copy of the Draft Separation Agreement which contained confidential information about TGS's profits and bonus calculations.

TGS consented to arbitration and the trial court referred the matter to arbitration with JAMS.  Six months later, Brown filed his Demand in Arbitration, significantly expanding his claims to include new allegations of wrongful termination, whistleblowing, and regulatory compliance violations, including federal "Dodd-Frank" and "Sarbanes-Oxley" claims.

TGS filed its answer and counterclaims in the arbitration.  TGS stated in its answer "that it will not seek to enforce the covenant not to compete contained in paragraph 6 of the [Employment] Agreement[.]"  TGS alleged claims against Brown for

4

breach of contract and declaratory relief, seeking to recoup from Brown the deferred 2014 bonus of $652,243 TGS paid him in December 2016 under a reservation of rights, and for relief from the obligation to pay Brown his deferred 2015 bonus of $300,000 due to be paid in December 2017. Citing the terms of the Bonus Agreement, TGS alleged Brown forfeited these two deferred bonuses when he violated the confidentiality provisions of the Employment Agreement by filing a copy of the Draft Separation Agreement which disclosed the identity of TGS's clients and its "bonus formula" for computing employee bonuses.

The parties engaged in substantial discovery. TGS moved for summary disposition of claims, which the arbitrator granted to a large extent. The arbitrator dismissed all but one of Brown's whistleblower and wrongful termination claims.[1] Just four of Brown's claims remained: declaratory relief "to invalidate, clarify or reform" portions of the Employment Agreement to comport with section 16600; payment of the $300,000 deferred 2015 bonus based on TGS's acknowledged oral promise to pay the bonus; violations of Business and Professions Code Section 17200 (based on the anti-competitive provisions of the Employment Agreement); and violation of Labor Code Section 1102.5(a), which outlaws employment policies that prevent whistleblowing complaints.

---

[1] The arbitrator's final award provided the following explanation for missing these claims in the final arbitration award: "Brown acted in bad faith and engaged in frivolous conduct regarding the submission of his Demand in Arbitration and the prosecution of his claims[.]" The arbitrator observed Brown acknowledged "either in discovery or during his Hearing testimony" that as to "[a]ll but a few" of his claims, he "knowingly" submitted claims "without merit[.]"

5

C. *The Arbitration Award*

After a five-day trial and posthearing briefing, the arbitrator denied all of Brown's claims and granted both of TGS's counterclaims. [2]

1. The Forfeiture of Brown's Deferred Bonuses

The arbitrator ruled in favor of TGS on Brown's claim for the $300,000 deferred 2015 bonus and on TGS's counterclaim to recover the $652,243 deferred 2014 bonus it paid Brown in December 2016. Citing the terms of the Bonus Agreement, the arbitrator found Brown forfeited his right to both deferred bonuses by breaching the confidentiality provisions of the Employment Agreement.

The arbitrator explained that under section 4.3 and related provisions of the Bonus Agreement, any "vested" but "unpaid" bonus due a departed employee is

[2] In this appeal, TGS filed a respondent's appendix comprised of excerpts from the transcript of the arbitration hearing. Brown filed a motion to strike the respondent's appendix and parts of the respondent's brief which refer to excerpts from that appendix. The motion to strike argues the respondent's appendix violates rule 8.124(g) of the Rules of Court because the appendix comprises documents which were not filed in the trial court. Brown also seeks sanctions against TGS for the rule violation.

In its opposition to the motion to strike, TGS argues these transcript excerpts, though not part of the record, "were an underlying source material" for many of the facts cited in the arbitrator's final award. TGS explains "there was no reason" to file these transcripts in the trial court because Brown's motion to vacate the arbitration award did not "attempt to mischaracterize his arbitration testimony or TGS's questioning of him" regarding the misconduct which led the arbitrator to find he forfeited two bonuses. "By contrast, on appeal, Brown's Opening Brief attempted to downplay his misconduct . . . ." TGS contends it submitted the respondent's appendix believing "it would be helpful to provide the Court with the original source materials (the arbitration transcripts), to avoid an accusation by Brown that it had mischaracterized the record or his testimony."

TGS argues we should deny Brown's motion to strike and request for sanctions and take judicial notice of the arbitration transcripts comprising the respondent's appendix. (See Evid. Code, § 452 (d) & (h)); *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 525 ["trial court properly took judicial notice of" documents from underlying arbitration proceeding].) We find TGS's suggestion reasonable. We deem TGS's filing of the respondent's appendix a request for judicial notice of the documents in the appendix, and grant the request. We deny Brown's motion to strike and his request for sanctions against TGS.

6

"immediately" forfeited if "subsequent to termination" TGS discovers the employee, though terminated without cause, committed "an act which could have been the basis for termination for Cause with Prejudice," specifically including the breach of the confidentiality provisions of the Employment Agreement. The arbitrator concluded, "These violations of the confidentiality provisions of his Employment Agreement triggered the forfeiture of any unpaid bonuses[.]"

The arbitrator ordered Brown to refund to TGS the $652,243 deferred 2014 bonus with interest, and he denied Brown's claim for payment of the $300,000 deferred 2015 bonus.

2. Declaratory Relief Based on Section 16600

The arbitrator characterized Brown's claim for declaratory relief as a request for "a ruling by the Arbitrator that the non-competition and confidentiality provisions of the Employment Agreement are illegal and unenforceable" under § 16600. The arbitrator concluded Brown was "not entitled to the relief requested."

Regarding the explicit noncompete provision in section 6 of the Employment Agreement, the arbitrator noted, "The two[-]year period during which the non-compete provision was to be in force has expired." Moreover, "Brown's testimony . . . affirmatively established that he made no effort to become employed in statistical arbitrage during that period, and instead devoted his efforts to the design of his own statistical arbitrage system based on public knowledge 'available on the internet.' Under these circumstances there is no predicate case or controversy as to which declaratory relief can be awarded."

The arbitrator also denied Brown's request for declaratory relief as to the confidentiality provisions of the Employment Agreement. Brown's complaint alleged the confidentiality provisions were "overbroad, vague and ambiguous," and sought a declaration which "would enable him to practice his profession of statistical arbitrage without being subjected to unfounded claims that he has used TGS' 'trade secrets' and

7

'confidential information[.]'"  The complaint asserted Brown intended "to compete fairly with TGS by using only systems that he has independently developed using public domain information," and believed "matters of general knowledge within the securities industry may not be classified as trade secrets or confidential information entitled to protection[.]"  Brown alleged both he "and TGS have a direct interest in obtaining a judicial determination as to whether or not [he] may fairly compete with TGS . . . without exposure to claims by TGS for damages for breach of the Employment Agreement . . . and without impacting his right to receive the remainder of his bonus under the Bonus [] Agreement."

The arbitrator concluded Brown's request for declaratory relief as to the confidentiality provisions of the Employment Agreement was "without merit."  The arbitrator explained his reasoning as follows:  "There has been no showing that the confidentiality provisions of the Employment Agreement are unreasonably restrictive in the context of the nature of Brown's employment and the business in which TGS was engaged.  Claimant, in effect, is not asking the Arbitrator to confirm his right to seek and engage in future employment, but is seeking an order finding that the manner in which Claimant conducts himself in the course of his *anticipated* future employment will not place him in violation of the confidentiality provisions of the Employment Agreement.  The arbitrator*, not being able to foresee the nature of Claimant[']s conduct in the context of his anticipated future employment,* cannot make such a finding."  (Italics added.)

As will be seen, Brown attacks this ruling as a refusal to decide his *facial* challenge to the legality of the confidentiality provisions under section 16600; TGS supports this ruling as a proper finding Brown's challenge was not "ripe" because it concerned only "anticipated future employment."

The arbitrator also identified "[a]s a separate and distinct ground[] for denying the equitable relief requested by Brown" the fact Brown had stolen TGS's confidential information about its "historical earnings" by copying the electronically-

8

stored information onto his cell phone and retaining the information "after his employment was terminated[.]" The arbitrator ruled this act "disqualifies [Brown] from receiving the equitable relief requested[,]" as does Brown's "intentionally" false testimony at the hearing regarding how he obtained this confidential information.

### 3. The Derivative Claim for Unfair Business Practices

The arbitrator found "no factual basis" for Brown's claim of unfair business practices under Business and Professions Code section 17000, given the claim "is a derivative of" the failed declaratory relief claim.

### 4. The Labor Code section 1102.5 Claim

The arbitrator wrote: "Labor Code Section 1102.5(a) makes it unlawful for an employer to make and enforce any rule, regulation, or policy that would prevent an employee from disclosing to a local, state, or federal agency information concerning a perceived violation of local, state, or federal laws, rules or regulations."

The arbitrator found no merit to Brown's claim TGS violated this statute because "Brown never became personally aware of any perceived violations by TGS" of such law, rules or regulations and the confidentiality provisions of the Employment Agreement "did not prevent the reporting of perceived violations to governmental agencies and regulators because such violations were expressly excluded from the prohibition on disclosing confidential information contained in the Employment Agreement."

### 5. The Discretionary Award of Attorney Fees and Costs

The arbitration clause of the Employment Agreement contained a fee-shifting provision authorizing the arbitrator to "order any Party acting in bad faith" to pay the legal fees and costs "of the other Party." The arbitrator awarded TGS its attorney fees and costs based on the finding Brown acted in bad faith.

The arbitrator cited the following incidents of bad faith on Brown's part: "Brown acted in bad faith and engaged in frivolous conduct" in filing and prosecuting

9

claims Brown knew were "without merit at the time they were first submitted." Brown "abused the discovery process by knowingly failing to disclose material and relevant information and documents that would have exposed his theft of TGS documents and data and resulted in an earlier disposition of his claims." Finally, the arbitrator found Brown acted in bad faith when he "knowingly testified falsely under oath as to the manner in which he obtained [that] information[.]"

The arbitrator ordered Brown to pay TGS $2,462,721 for its attorney fees and $172,682 for its costs, in addition to $652,243 for the refund of the deferred 2014 bonus, plus interest from December 24, 2016 through the date of the award in the amount of $134,031, and interest on the entire award from the date of the award until paid.

D. *The Order Confirming the Arbitration Award and the Judgment*

TGS petitioned the trial court for confirmation of the arbitration award and a judgment in its favor. Brown filed a petition to vacate the award, seeking review of the award solely under Code of Civil Procedure section 1286.2, subdivision (a)(4), contending the arbitrator "exceeded his powers" in issuing an award violating "fundamental public policy and California statutes."

Brown argued the award violated the following statutory employment rights: the right to be free from anticompetitive contracts under section 16600; the right to be paid for earned wages and to be free from the claw back of earned wages under Labor Code sections 200 and 221; and the right to assert employment claims in arbitration "as if the claims were asserted in court, as guaranteed by *Armendariz v. Found[ation] Health Psychcare Serv[ices], Inc.* (2000) 24 Cal.4th 83, 100-101 [(*Armendariz*)]," with access to the same remedies in court and without risking having to pay the employer's "exorbitant" attorney fees and costs.

The trial court denied Brown's petition to vacate the arbitration award and granted TGS's petition to confirm the award. The court concluded the arbitrator did not exceed his power by issuing an award that violated any public policy. The court

10

explained that because the arbitrator denied Brown's request for declaratory relief on grounds the controversy was not "ripe" and Brown had unclean hands, the arbitrator did not "enforce" the confidentiality provisions of the Employment Agreement and therefore his ruling did not implicate public policy. The court stated: "There is no explicit legislative expression of public policy that prevents arbitrators from declining to issue declaratory relief on mootness or ripeness grounds or based on the claimant's unclean hands."

The trial court also upheld the arbitrator's rulings on the two deferred bonuses, based on the arbitrator's finding Brown forfeited the bonuses due to "misconduct." Finally, the court upheld the substantial attorney fees award, rejecting Brown's challenge to the Employment Agreement's fees shifting provision. Brown argued the provision violated *Armendariz* by requiring Brown to prove TGS's bad faith before he could recover his attorney fees and costs, a burden he would not have faced had he prevailed on his public policy claims in court. The court dismissed Brown's argument as purely "hypothetical," noting "there was never any basis to consider whether Plaintiff should recover fees or costs," given the arbitrator's finding all of Brown's claims lacked merit and he had acted in bad faith.

II

DISCUSSION

A. *Judicial Review of Arbitration Awards Which Conflict With Statutory Rights*

In ruling on a petition to vacate an arbitration award, "the court shall vacate the award if the court determines . . . [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).) We review de novo "the question whether the arbitrator exceeded his powers and thus whether we should vacate his award on that basis[.]" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1 (*Richey*); Code Civ. Proc., § 1286.2, subd. (a)(4).)

11

In seeking to vacate the arbitration award here, Brown invokes the substantial body of case law holding arbitrators exceed their powers "by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy. [Citations.]" (*Richey*, *supra*, 60 Cal.4th at p. 916.) That case law emanates from *Moncharsh, supra*, 3 Cal.4th 1, which declared an arbitration award is subject to judicial review if inconsistent with the protection of a party's statutory rights.

In *Moncharsh*, our Supreme Court famously articulated the rule that the merits of an arbitrator's decision are "not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." Importantly, however, the Supreme Court also noted there are "limited exceptions to this general rule[.]" (*Id.* at p. 6.)

*Moncharsh* discussed two of the "limited exceptions" in which judicial review of an arbitrator's award is warranted. The first of these exceptions is "where a party claim[s] the entire contract or transaction was illegal." (*Moncharsh*, *supra*, 3 Cal.4th at p. 32, citing *Loving & Evans v Blick* (1949) 33 Cal.2d 603, 609 [reversing arbitration award under construction contract because state law bars enforcement of contract with unlicensed contractor] and *All Points Traders, Inc. v. Barrington Associates* (1989) 211 Cal.App.3d 723, 738 [reversing arbitrator's award of commission to unlicensed real estate broker where enforcement of commission contract "'would be in direct contravention of the statute and against public policy'"].) *Moncharsh* recognized another "exceptional circumstance[] justifying judicial review of an arbitrator's decision" arises where, though a contract is not entirely illegal, "granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.)

As the court of appeal observed in *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21 (*Ahdout*), "Numerous courts have since construed *Moncharsh* to

12

stand for the proposition that an arbitrator exceeds its powers within the meaning of Code of Civil Procedure section 1286.2 by issuing an award that violates a party's statutory rights or 'an explicit legislative expression of public policy.'  [Citations.]"  (*Id.* at p. 37 ["'courts may, indeed must, vacate an arbitrator's award when it violates a party's statutory rights'"].)

Brown contends we must reverse the judgment because the trial court's confirmation of the arbitration award conflicts with Brown's right under section 16600 to pursue lawful employment.  As we explain below, the contention has merit.

B.  *The Arbitrator's Decision Was Inconsistent With Protecting Brown's Section 16600 Right to Work in His Chosen Profession*

1.  Applicable Law

*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564 (*Dowell*) provides a comprehensive overview of the public policies underlying section 16600, which declares "every contract" that restrains "anyone . . . from engaging in a lawful profession, trade, or business of any kind is to that extent void."[3]  (§ 16600.)

The *Dowell* opinion states:  "Section 16600 expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice.  [Citations.]  California courts 'have consistently affirmed that

_____

[3]     "There are only three statutory exceptions to this prohibition on noncompete agreements:  One who sells the goodwill of a business, or all of one's ownership interest in a business entity (which includes partnerships or corporations), or substantially all of its operating assets and goodwill, to a buyer who will carry on the business may agree with the buyer not to carry on a similar business within a specified geographic area, if the business will be carried on by the buyer (§ 16601); upon dissolution of a partnership or dissociation of a partner, such partner may agree not to carry on a similar business within a specified geographic area, if the business will be carried on by remaining partners or anyone deriving title to the business or its goodwill (§ 16602); and a member of a limited liability company may agree not to carry on a similar business within a specified geographic area, so long as other members or anyone deriving title to the business or its goodwill carries on a like business (§ 16602.5)."  (*Dowell*, *supra*, 179 Cal.App.4th at p. 574.)

13

section 16600 evinces a settled legislative policy in favor of open competition and employee mobility.'  (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 946 (*Edwards*).)  'The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.'  [Citations.]  An employer's use of an illegal noncompete agreement also violates the UCL (§ 17200 ['unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising'].)  [Citations.]"  (*Dowell*, *supra*, 179 Cal.App.4th at p. 575.)

In *Dowell*, the appellate court affirmed the trial court's ruling on summary adjudication that the noncompete and nonsolicitation provisions in an employment agreement the plaintiffs signed as a condition of employment violated section 16600 and, accordingly, were void *ab initio* and unenforceable.  (*Dowell*, *supra*, 179 Cal.App.4th at p. 575.)  The opinion noted the "broadly worded noncompete clause" prevented the plaintiffs for a period of 18 months after leaving defendant Biosense's employ "from rendering services, directly or indirectly, to any competitor in which the services they may provide could enhance the use or marketability of a conflicting product by application of confidential information to which the employees had access during employment."  (*Ibid.*)  Similarly, the nonsolicitation clause prevented the employees during the same 18-month postemployment period "from soliciting any business from, selling to, or rendering any service directly or indirectly to any of the accounts, customers or clients with whom they had contact during their last 12 months of employment."  (*Ibid.*)  The court held these provisions were void under section 16600 because they "restrain the employees from practicing their chosen profession."  (*Ibid.*)

Importantly for the present appeal, the court in *Dowell* rejected the defendant's contention it was improper for the trial court to determine the validity of the anticompetitive clauses by summary adjudication.  Notwithstanding Biosense's assertion

14

the trial court "failed to consider Biosense's evidence that trade secrets existed and that the clauses were necessary to protect them[,]" the appellate court held the trial court properly could determine the clauses' validity under section 16600 as a matter of law. "Having properly determined that the clauses were *facially void* under section 16600, the trial court was not required to undertake any further analysis." (*Dowell*, *supra*, 179 Cal.App.4th at p. 579, italics added; accord, *Edwards*, *supra*, 44 Cal.4th at p. 948 [finding covenant not to compete invalid as a matter of law where trial court "took no evidence"]; *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407 [finding covenant not to compete invalid as a matter of law on demurrer]; *Kelton v. Stravinski* (2006) 138 Cal.App.4th 941, 946-949 [finding covenant not to compete invalid as a matter of law on summary judgment]; *Latona v. Aetna U.S. Healthcare Inc*. (C.D. Cal.1999) 82 F.Supp.2d 1089, 1093 [factual analysis of trade secret issues is "secondary" to determination of "facial validity" of covenant not to compete].)

2.  The Arbitrator Should Have Declared the Anticompetitive Provisions of the Employment Agreement Void Under Section 16600

Brown argues several provisions of the Employment Agreement illegally restrained him from working in statistical arbitrage after leaving TGS, rendering these provisions void *ab intio* and unenforceable under section 16600. (*Dowell*, *supra*, 179 Cal.App.4th at p. 575.) Brown asserts the arbitration award, which denied Brown's declaratory relief claim and left these illegal, anti-competitive provisions in effect, exceeded the arbitrator's powers. (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.) Accordingly, Brown contends, the trial court erred in denying his petition to vacate the arbitration award. (*Ibid.*; Code Civ. Proc., § 1286.2, subd. (a)(4) [court shall vacate award if "arbitrators exceeded their powers"]; *Ahdout*, *supra*, 213 Cal.App.4th at p. 37 [courts must vacate arbitrator's award which violates party's statutory rights].) For the reasons explained below, we agree.

15

Brown contends the most significant anticompetitive provisions in the Employment Agreement, and the ones central to this appeal, are the extremely broad "confidentiality" provisions in section 4 of the Employment Agreement.[4]  These confidentiality provisions set forth in detail the employee's duty to "keep all Confidential Information in strictest confidence and trust" during and after employment with TGS.

We agree the definition of "Confidential Information" in the Employment Agreement is strikingly broad.  The term "means information, in whatever form, used or usable in, or originated, developed or acquired for use in, or about or relating to, the Business[.]"  "The Business," in turn, is defined to include "without limitation analyzing, executing, trading and/or hedging in securities and financial instruments and derivatives thereon, securities-related research, and trade processing and related administration . . . ."

In effect, as Brown points out, "TGS is claiming for itself, without limitation, *all* information that is 'usable in' or that 'relates to' the securities industry." So defined, the "Business" means not just statistical arbitrage—the actual business of TGS—but, instead, refers to all aspects of working in the securities industry at large. Brown asserts these confidentiality provisions effectively bar Brown from *ever* using TGS's "Confidential Information" for the benefit of any party other than TGS; he contends the provisions are so expansive as to "prevent[] Brown from trading in securities at all—even if just for his own benefit—for the remainder of his life."

---

[4]    Brown argues the following additional provisions in the Employment Agreement also violate section 16600:  the two-year ban on engaging in "Directly Competitive Activity" in section 6; the "notice" provision in section 2(b)(iii) which requires a departing employee to give TGS written notice *anytime* he accepts a job or undertakes self-employment in the securities industry and to provide proof he has "notified any prospective employer" of the confidentiality restrictions in the Employment Agreement, and the "invention assignment" provision in section 3, which prohibits the employee from disclosing at any time, during or after employment with TGS, to anyone other than TGS or its clients, or using for the benefit of anyone other than TGS or its clients, the employee's "Inventions," defined as including "concepts, ideas, improvements, . . . strategies, methods, systems, know-how . . . ."

16

The vast scope of the prohibition becomes clear in light of the two "exceptions" to what TGS claims as "Confidential Information." The first is for "information which is or becomes generally known in the securities industry through legal means without fault by" Brown. As Brown explains, this exception is worthless to one desiring to work in statistical arbitrage "because statistical arbitrage is profitable only if the variables and methods behind it are *not* 'generally known[.]'" In other words, Brown asserts he will be unable to work profitably in statistical arbitrage if restricted to using only securities-related information that *is* generally known.

The second exception even more sharply illustrates TGS's overreach in identifying "Confidential Information" Brown never may use or disclose in future employment. This exclusion comprises information which "was known by Employee on a non-confidential basis prior to his initial engagement or employment by Employer, as evidenced by Employee's written records." Brown points out the absurdity of this exception: "In other words, securities-related information that was *not confidential* before Brown's employment with TGS metamorphoses into TGS's 'Confidential Information' unless Brown has written records proving his prior knowledge of the information."

In its respondent's brief, TGS does not attempt to defend the legality of these confidentiality provisions. Instead, TGS simply argues the arbitration award did not exceed the arbitrator's powers under *Moncharsh* because the award did not *enforce* the confidentiality provisions of the Employment Agreement. TGS asserts the arbitrator declined to decide the validity of these provisions because he concluded Brown's declaratory relief claim was not "justiciable." TGS argues Brown's "challenge to the confidentiality provision was unripe and lacked any factual predicate because it sought a determination only as to the legality of Brown's unknowable future conduct." The assertion lacks merit.

Brown mounted a *facial* challenge to the confidentiality provisions. He argued the provisions were so broadly written as to prevent him from ever again working in his chosen profession. Under *Dowell*, *supra*, 179 Cal.App.4th 564, that facial challenge was a sufficient basis for determining whether the confidentiality provisions violated section 16600. (*Id.* at p. 579 ["Having properly determined that the clauses were facially void under section 16600, the trial court was not required to undertake any further analysis"].) Indeed, a court must decide the merits of a facial challenge to contracts allegedly containing provisions that violate section 16600. Consequently, the arbitrator erred here in concluding he "cannot make a finding" on the legality of the confidentiality provisions because the arbitrator is unable to "foresee the nature of [Brown's] conduct in the context of his anticipated future employment[.]"[5] The factual details of Brown's future employment were irrelevant. Brown's facial challenge to the provisions argued they were invalid *ab initio*; no "as applied" analysis of the provisions was in order.

In fact, the arbitrator did make a finding of sorts on the merits. The arbitrator observed Brown made "no showing that the confidentiality provisions . . . are unreasonably restrictive in the context of the nature of Brown's employment and the business in which TGS was engaged." But it is difficult to square this finding the provisions were not "unreasonably restrictive" with the sweeping definition of "Confidential Information" examined above. In any event, in *Edwards*, *supra*, 44 Cal.4th at p. 955, the Supreme Court rejected the notion a "narrowly drawn" restraint on trade is legal under section 16600. "Noncompetition agreements are invalid under section 16600

---

[5] An arbitrator's legal error is reviewable if the error prevented the plaintiff from getting a hearing on the merits of his claim for violation of unwaivable statutory rights. (See *Ritchey*, *supra*, 60 Cal.4th at pp. 917-918, discussing *Pearson Dental Supplies*, *Inc. v. Superior Court* (2010) 48 Cal.4th 665, 680 [trial court properly reversed arbitrator's award for failure to reach FEHA issue]).

18

in California, even if narrowly drawn, unless they fall within the applicable statutory exceptions of section 16601, 16602, or 16602.5." (*Edwards*, *supra*, 44 Cal.4th at p. 955.)

Brown's facial challenge to the legality of the confidentiality provisions is a legal issue we decide de novo. (See *Condon-Johnson & Associates, Inc. v. Sacramento Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1392 ["when the issue is one of law, we exercise de novo review"]; *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 741 [application of statute to undisputed facts is question of law, reviewed de novo].) Based on our analysis of these provisions, set forth in detail above, we conclude the confidentiality provisions in the Employment Agreement on their face patently violate section 16600.[6] Collectively, these overly restrictive provisions operate as a de facto noncompete provision; they plainly bar Brown in perpetuity from doing any work in the securities field, much less in his chosen profession of statistical arbitrage. Consequently, we conclude the confidentiality provisions are void *ab initio* and unenforceable. (*Dowell*, *supra*, 179 Cal.App.4th at p. 575; see also *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 940, 948 [finding confidentiality provisions illegal under section 16600 where confidential information defined in way that interferes with employee's right to compete].)

In reaching this conclusion, we reject the arbitrator's "alternative" ground for denying declaratory relief based on Brown's "unclean hands." The issue was not easy to resolve, however. On the one hand, TGS rightly points out equity "demands that a plaintiff . . . come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." (*Kendall-Jackson Winery, Ltd. v. Superior*

---

6    The two-year noncompete provision in section 6 of the Employment Agreement also was void under section 16600. (See, *Edwards*, *supra*, 44 Cal.4th at p. 955 ["Noncompetition agreements are invalid under section 16600 in California, even if narrowly drawn"].)

19

*Court* (1999) 76 Cal.App.4th 970, 978.) The arbitrator certainly had grounds for concluding Brown's hands were unclean, given his theft of TGS's confidential information before being terminated, and then lying about those circumstances in his testimony at the hearing.

On the other hand, the weighing of the equities is complicated here because of the importance of the public policies at stake in the declaratory relief claim. We are cognizant of the oppressive, potentially career-ending confidentiality provisions Brown agreed to as a condition of employment, and the fact his theft of the information apparently caused no harm to TGS.

The *Dowell* court faced the same dilemma. (*Dowell*, *supra*, 179 Cal.App.4th 564.) There, the court approvingly noted "the trial court found that Biosense's unclean hands defense was irrelevant to the question of whether the noncompete and nonsolicitation clauses were enforceable under section 16600 . . . because [the bad conduct ] would be wholly unrelated to the transaction to which plaintiffs sought relief." (*Id*. at p. 571; see also *Kofsky v. Smart & Final Iris Co*. (1955) 131 Cal.App.2d 530, 532 ["the equitable rule that 'he who comes into equity must come with clean hands,' has no application where the failure to restrain an act because the parties are in *pari delicto* would result in permitting an act declared by statute to be void or against public policy"].) We follow the court's lead in *Dowell* and conclude the unclean hands defense here was irrelevant to the question of whether the confidentiality provision was enforceable under section 16600.

In conclusion, the confidentiality provisions in section 4 of the Employment Agreement severely restricted Brown's right to work in clear contravention of section 16600. Despite the facial invalidity of these provisions, the arbitrator did not declare them void and unenforceable. Instead, the arbitration award allowed the provisions to stand as a perpetual restriction on Brown's right to compete with TGS. Because the arbitration award is inconsistent with the protection of Brown's rights under

20

section 16600, the award exceeded the arbitrator's powers. (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.) Consequently, the trial court erred in denying the petition to vacate the arbitration award and in entering judgment on the award. (*Ibid.*; Code Civ. Proc., § 1286.2, subd. (a)(4).)

3. The Arbitrator Erred in Finding Brown Forfeited the Deferred Bonuses

Brown also challenges the arbitrator's ruling Brown forfeited his deferred bonuses by violating the confidentiality provisions of the Employment Agreement. Brown makes several arguments on this point, but we find one compelling: Brown persuasively asserts that because the arbitrator explicitly based his finding of forfeiture on Brown's breach of confidentiality provisions which violate section 16600,[7] the forfeiture ruling enforces those illegal provisions and is itself inconsistent with the protection of Brown's statutory rights. Accordingly, the forfeiture ruling in the arbitration award is also subject to reversal under *Moncharsch*, *supra*, 3 Cal.4th at page 32.

TGS tries to avoid the ineluctable logic of this argument by contending the arbitrator's forfeiture finding may be sustained on an alternative ground: TGS contends Brown's act of secretly copying to his cell phone TGS's confidential financial information was a "deliberately deceptive act in the course of employment," a separate ground for bonus forfeiture under section 1(c)(i) of the Bonus Agreement.[8] The argument fails, however, for the simple reason the arbitration award identifies the breach

---

[7] The arbitration award states Brown's violations of the confidentiality provisions in the Employment Agreement "triggered" the forfeiture of the two deferred bonuses.

[8] Section 1(c) of the Bonus Agreement identifies three categories of employee conduct that qualify as a "Cause with Prejudice" which, if TGS discovers the employee has committed postemployment, results in immediate forfeiture under section 4.3 of any earned but unpaid bonuses. The three categories of "Cause with Prejudice" identified in section 1(c) are: "(i) the commission by Employee of a fraudulent, illegal or deliberately deceptive act in connection with Employee's employment . . ."; "(ii) the breach by Employee in any material respect of any covenant in any written agreement to which TGS and Employee are parties . . . , including without limitation any confidentiality agreement . . ."; and "(iii) any material misrepresentation by Employee to TGS . . . ."

21

of the confidentiality provisions as the cause of the forfeiture. In doing so, the forfeiture ruling enforces illegal anticompetitive provisions in the Employment Agreement. *Moncharsh* and its progeny make clear such an arbitration award cannot stand.[9]

On remand, TGS can attempt to prove Brown forfeited the deferred bonuses by committing "a fraudulent, illegal or deliberately deceptive act in connection with [his] employment" as set forth in the Bonus Agreement (see fn. 8, above). Brown, for his part, may assert, as he does on appeal, forfeiture based on the conduct in question would constitute the improper enforcement of an invalid liquidated damages provision. (See *Graylee v. Castro* (2020) 52 Cal.App.5th 1107, 1115 (*Graylee*) [under Civ. Code § 1671, subd. (b), "'a liquidated damages clause becomes an unenforceable penalty "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach"'"].)

C. *The Discretionary Award of Attorney Fees and Costs*

Brown contests the fees award on multiple grounds. We need not resolve these arguments, however, because we are reversing the judgment and remanding the matter for further proceedings. The arbitrator may revisit the issue of entitlement to fees on remand.

---

[9]    In light of this holding, we need not address Brown's alternative argument the forfeiture ruling constituted a "claw back" of earned wages and denial of payment due an employee in violation of Labor Code sections 201 and 202.

22

## III

### DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court for further proceedings consistent with this opinion.  Brown is entitled to his costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD HALE BROWN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>TGS MANAGEMENT COMPANY, LLC,<br><br>    Defendant and Respondent. | G058323<br><br>(Super. Ct. No. 30-2016-00881773)<br><br>ORDER DENYING REHEARING; MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

The petition for rehearing filed by respondent TGS Management Company, LLC, is DENIED.

It is ordered that the opinion filed on October 13, 2020, is hereby MODIFIED as follows:

1.    On page 5, change the first sentence of footnote 1 to read as follows:

The arbitrator's final award provided the following explanation for dismissing these claims:

2. On page 16, in footnote 4, at the end of the sixth line and following the words "Employment Agreement," change the comma to a semicolon.

3. On page 18, in the first paragraph, modify the fourth full sentence to read as follows:

Indeed, the arbitrator had a duty to decide the merits of Brown's facial challenge to the confidentiality provisions under section 16600.

Move footnote 5 to the end of that modified sentence. Modify footnote 5 by deleting the text of the footnote and replacing it with the following text:

In *Ritchey*, *supra*, 60 Cal.4th 909, the Supreme Court affirmed the rule that in an arbitration arising from a mandatory arbitration employment agreement, the employee is entitled to a hearing on the merits of his claim of violation of unwaivable statutory rights. (*Id*. at pp. 917-918, citing *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 680 [arbitrator's legal error reviewable if error deprived employee of "'a hearing on the merits of his FEHA claims, or claims based on other unwaivable statutory rights"].)

4. On page 19, following the first full paragraph which ends with "employee's right to compete].),'" delete the next three paragraphs, beginning with the words "In reaching this conclusion" and ending with the words "under section 16600." In place of those three paragraphs, insert the following text:

Arguing against this result, TGS warns voiding the Employment Agreement's confidentiality provisions under section 16600 will strip TGS of the ability to protect its confidential information, including trade secrets. We disagree. Our conclusion these particular provisions are void does not prevent TGS from enforcing a properly drawn confidentiality agreement which preserves an employee's right to compete after leaving TGS's employ. The confidentiality provisions at issue here simply do not meet that test. Moreover, TGS can prevent former employees from disclosing trade secrets and other confidential information by pursuing injunctive relief and tort remedies under the Uniform Trade Secrets Act (Civ. Code, §§ 3426 et seq.) and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.). (See *The Retirement Group v. Galante* (2009)

2

176 Cal.App.4th 1226, 1238 ["section 16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause purporting to ban a former employee from soliciting former customers . . ., but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act and/or the Unfair Competition Law) by banning the former employee from using trade secret information to identify existing customers, to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer"].)

TGS also argues we should affirm the arbitrator's decision to deny Brown's declaratory relief claim on the "alternative ground" of unclean hands. While we do not quarrel with the arbitrator's finding Brown had unclean hands, the existence of an alternative ground for denying declaratory relief is irrelevant. Regardless of the reasoning, the arbitrator's decision to deny declaratory relief allows TGS to use illegal contractual provisions to restrict in perpetuity Brown's right to work. Accordingly, the decision is inconsistent with the protection of Brown's rights under section 16600 and exceeds the arbitrator's powers. (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.)

Our conclusion is consistent with case law holding the unclean hands doctrine does not apply where it "would result in permitting an act declared by statute to be void or against public policy." (*Kofsky v. Smart & Final Iris Co*. (1955) 131 Cal.App.2d 530, 532 (*Kofsky*).) In *Kofsky*, the court affirmed an order granting a preliminary injunction restraining a cigarette vendor from violating the Unfair Practices Act (Bus & Prof. Code, §§ 1700 et seq.) by selling cigarettes below cost with the intent to destroy competition. The opinion specifically rejected defendant's contention the unclean hands doctrine applied and foreclosed plaintiff's claim for relief because plaintiff had engaged in the exact same conduct and was equally "guilty of violating the Unfair Practices Act." (*Kofsky*, *supra*, 131 Cal.App.2d 530.)

The court stated: "It is settled that the equitable rule that 'he who comes into equity must come with clean hands,' has no application where the failure to restrain an act because the parties are *in pari delicto* would result in permitting an act declared by statute to be void or against public policy. [Citations.] [¶] . . .[S]ince . . . the acts which defendant was restrained from doing were against public policy, . . . it is immaterial . . . whether plaintiff had unclean hands or not." (*Id.* at p. 532; *Page v. Bakersfield Uniform & Towel Supply Co*. (1966) 239 Cal.App.2d 762, 770.)

5. In the last paragraph on page 20 which begins with "In conclusion," modify the first sentence of that paragraph to read as follows:

3

In conclusion, the Employment Agreement's confidentiality provisions severely restrict Brown's right to work in clear contravention of section 16600.

These modifications do not change the judgment.

Appellant, Richard Hale Brown, and nonparty, Gabriela Bunea, have requested that our opinion filed on October 13, 2020, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

ARONSON, J.

WE CONCUR:

MOORE, ACTING P. J.

GOETHALS, J.

4